IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

DANNY RAYMOND SCHWAB,　　　)
　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　)　　　　13-CV-3184
　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
GREGG SCOTT,　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　Defendant,　　　　　　　)

**OPINION**

COLIN STIRLING BRUCE, U.S. District Judge.

Plaintiff, proceeding pro se from his detention in the Rushville Treatment and Detention Center, alleges that he was not provided sufficient drinking water for five days in April of 2013, while a boil order was in effect. Defendant Scott, the Director of the Center, moves for summary judgment. The Court views the evidence in the light most favorable to Plaintiff at this stage, resolving material factual disputes in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1

## FACTS

In April of 2013, Defendant Scott learned from the county health department that a boil order would be in effect beginning April 25, 2013. Scott caused a memo to be posted informing residents and staff of the boil order which stated:

> The TDF has been informed by the Schuyler County Illinois Health Department that during the boil order, which is to start at 12:01 a.m. on Thursday, 4/25/13, the facility can still utilize tap water for showers, brushing teeth, laundry, etc. However, any water that residents or staff would consume will need to be boiled before consuming.

(4/24/13 Memo, d/e 16-2, p. 5.)

During the boil order, dietary workers brought about three gallons of boiled water to each living unit, which Plaintiff asserts was insufficient for the 31 residents on his living unit.

Plaintiff does not dispute that he was able to boil as much water as he wanted from the sink in his room, using the microwave on the unit. (Pl.'s Dep. p. 23)("And, like I said, it was instructed, if you need extra, boil it in the microwave. You can boil as much as you want in the microwave."). Although he did not have access to the microwave when he was locked in his room at night, Plaintiff could have

microwaved a bowl of water to take to his room before lock-up. (Pl.'s Dep. 20.)

Plaintiff tried boiling his tap water in the microwave, but, according to Plaintiff, he could not drink the boiled water because it had "an inch of silt on the bottom," was "cloudy" and "had had an awful taste to it." (Defs.' Undisputed Fact 12.) Plaintiff could not get the water past his "gag reflex." (Pl.'s Aff. para. 3.) Plaintiff testified that he felt dehydrated, lethargic, and dizzy. (Pl.'s Dep. 11-13.) Plaintiff does not say whether he had access to other liquids such as milk or juice.

On April 30, 2014, a memo to staff and residents signed by Defendant Scott was posted which stated in relevant part:

> Effective immediately the Boil Order has been lifted for the City of Rushville, including the TDF. The City Water Department advised the TDF that the boil order was a precautionary measure for piping modifications and the installation of new pipes in the water system. The city Water Department assured the TDF that it is not necessary to flush the complete water system at the TDF and the water can be used immediately.

(4/30/13 Memo, d/e 16-2, p. 3.)

## ANALYSIS

Even viewing the facts in the light most favorable to Plaintiff, as required, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), no rational juror could find for Plaintiff.

Plaintiff is entitled to humane conditions of confinement, *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008), which of course includes adequate amounts of safe drinking water. To get to a jury, though, Plaintiff must have evidence that he "suffered a sufficiently serious deprivation" and that Defendant was deliberately indifferent to that deprivation. <u>Id.</u> Plaintiff has not produced enough evidence on either score to survive summary judgment.

Plaintiff has no evidence that the boiled water was unsafe to drink. The boiled water may have tasted bad and contained sediment, but that did not make the boiled water unsafe to drink. Plaintiff does not dispute that a boil order was in effect, which, to a layperson, means that the water *is* safe to drink after boiling. Had the unpalatable water lasted for an extended period, a sufficiently serious deprivation might have arisen, but here the condition lasted only five days. Additionally, Plaintiff does not mention whether he was provided other liquids, such as milk or juice, and he suffered

4

no physical injury, only discomfort and inconvenience. In short, on this record the deprivation was not objectively serious enough to garner the Constitution's attention. *See Sain*, 512 F.3d at 894 (peeling paint, foul odor, no air-conditioning, cockroach infestation and poor ventilation were not objectively serious enough to implicate constitution).

Even if the deprivation had been objectively serious, Plaintiff has no evidence that Defendant Scott was deliberately indifferent. Deliberate indifference in this context means knowledge that drinking the boiled water posed a substantial risk of serious harm. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001)("'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety'")(*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Scott was informed by the health department that the water should be boiled before drinking. He passed that news along to staff and residents, provided boiled water to each unit, and allowed residents to boil unlimited amounts of water from the room sinks. No evidence suggests that the boiled water was unsafe to drink, or

that at any time Scott was provided information that the boiled water was unsafe to drink. Additionally, Plaintiff admits that he did not personally inform Scott of Plaintiff's inability to drink the boiled water. Instead, Plaintiff asked staff to contact the "higher ups, including Gregg Scott" to see if dietary could deliver more water to the units and provide bottled water. (Pl.'s Dep. p. 16.) On this record, no rational juror could find that Defendants Scott knew of a substantial risk of serious harm to Plaintiff, much less that he disregarded that risk.

IT IS THEREFORE ORDERED:

1. Defendant's motion for summary judgment is granted (d/e 12). The clerk of the court is directed to enter judgment in favor of Defendant and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal

in forma pauperis should identify the issues Plaintiff will

present on appeal.  See Fed. R. App. P. 24(a)(1)(c).

ENTERED:  8/13/2014

FOR THE COURT:


                              **s/Colin Stirling Bruce**
                              COLIN STIRLING BRUCE
                              UNITED STATES DISTRICT JUDGE